UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
FREDETTE CANTOR, Individually, and as Legal  :
Representative of the Estate of Sheldon Cantor, :
                           Plaintiff,     :      06 Civ. 1392 (PAC)
                                       :      OPINION & ORDER
  -  against -                                :
                                       :
AMERICAN BANKNOTE CORPORATION,     :
AMERICAN BANKNOTE COMPANY, and      :
PATRICK GENTILE                              :
                            Defendants.    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

              HONORABLE PAUL A. CROTTY, United States District Judge:

              Plaintiff Fredrette Cantor claims on her own behalf and as representative of the estate of her husband, Sheldon Cantor ("Cantor"), against Defendants American Banknote Corporation ("ABN"), American Banknote Company ("ABNCo") and Patrick Gentile ("Gentile"), ABN's Chief Financial Officer, alleging state law claims for breach of contract, equitable estoppel, and negligent misrepresentation; and an Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), claim for breach of fiduciary duty.  Defendants move to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), arguing, <u>inter alia</u>, that (1) the exclusive jurisdiction of the United States Bankruptcy Court for the District of Delaware bars this Court from adjudicating Plaintiff's claims; (2) Plaintiff's allegations do not state a claim under ERISA; (3) Plaintiffs state law claims are preempted by ERISA; and (4) that ABN was discharged in bankruptcy from liability for this claim.  The Court finds that it has subject matter jurisdiction and so it denies Defendants' jurisdictional motion pursuant to Fed. R. Civ. P. 12(b)(1).  As to the motion pursuant to Fed. R. Civ. P. 12(b)(6), the Court grants

1

Defendants' motion in part and denies it in part, and dismisses Plaintiff's ERISA and negligent misrepresentation claims.

## RELEVANT FACTS[1]

From 1971 to September 18, 2001, Cantor was a full-time, management employee of ABN, and as such was eligible to receive life insurance benefits under a group insurance plan (the "Hartford Plan") issued by the Hartford Life and Accident Insurance Company ("Hartford"). ABN was responsible for paying the premiums on Cantor's life insurance coverage for as long as he was eligible. The Hartford Plan constitutes an employee benefit plan under ERISA, and ABNCo was at all relevant times the administrator and sponsor of the Hartford Plan within the meaning of the statute.

**I. The 2001 Agreement**

On or about December 8, 1999, ABN filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code in the Southern District of New York. During the ensuing bankruptcy proceedings, Cantor filed various compensation claims. In the course of ongoing negotiations over these claims, ABN representatives encouraged Cantor to retire or take long-term disability due to his various chronic ailments. Cantor wanted to maintain his insurance and medical benefits as an active ABN corporate officer, and so he rejected this proposal. Cantor and ABN ultimately entered into a Settlement Agreement in 2001 (the "2001 Agreement"). The agreement provided, <u>inter alia</u>, that "[u]pon expiration of [Cantor]'s eligibility, if any, to receive long-term disability payments, ABN shall pay [Cantor] severance benefits…payable in twelve (12) equal monthly installments…." Am. Compl. Ex. B ¶ 1(a). The 2001 Agreement further

---

[1] Except where specifically noted, the following facts are drawn from the Amended Complaint and the documents attached to it. Particular sources will be cited only where quoted.

provided that during the period in which payments, including the aforementioned severance payments, remained outstanding, ABN "shall take all necessary steps to amend its group insurance contracts to provide [Cantor] and [Cantor]'s dependants with the same level of insurance benefits provided to [Cantor] and his dependants pursuant to his existing Employment Agreement."  Am. Compl. Ex. B ¶ 2.

**II. Violation of the 2001 Agreement**

After the 2001 Agreement, Cantor applied for long-term disability benefits under the Hartford Plan, and left full-time employment with ABN on September 28, 2001.  His benefit application was approved, and he received such benefits from on or about January 2, 2002 through December 31, 2003, when the maximum benefit period under the Hartford Plan expired.  During this period he was assured by ABN personnel, including Gentile, that his life insurance coverage would continue and be protected while he was receiving long-term disability benefits.  In November 2003, in anticipation of the expiration of his disability benefits and subsequent termination of his life insurance coverage under the 2001 Agreement, Cantor attempted to convert his group insurance coverage to an individual life insurance policy.  He was ultimately denied his request for conversion when Hartford determined that his coverage under the Hartford Plan should have been terminated on September 28, 2002, one year after he ceased being actively employed by ABN, and the Hartford Plan allowed for conversion of coverage only within 31 days of termination.

### III. The Second Bankruptcy and the 2005 Agreement[2]

In early 2005, ABN filed for bankruptcy a second time. On April 8, 2005, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") issued an order (the "Confirmation Order") confirming a reorganization plan submitted by ABN (the "Reorganization Plan"). The Reorganization Plan provided that the "Released Parties" were released from liability "for any act or omission in connection with, relating to, or arising out of this Chapter 11 Case…and pursuit of confirmation of the [Reorganization Plan]." Affidavit of Peter S. Goodman ("Goodman Aff."), Ex. B ¶ 12.5. "Released Parties" included officers of ABN such as Gentile. Id. at ¶ 1.74.

The Reorganization Plan also stated that "on the Effective Date of the Plan, the Reorganized Debtor and Sheldon Cantor shall enter into the Cantor Consulting Agreement." Id. at ¶ 10.6. The Confirmation Order in turn stated that "[o]n the Effective Date, the Debtor shall be, and hereby is, authorized to enter into the Cantor Consulting Agreement with Sheldon Cantor…." Goodman Aff., Ex. C ¶ 19. This agreement (the "2005 Agreement") provided that, notwithstanding the reorganization, Cantor would be:

> entitled to commence any cause of action he held prior to [January 19, 2005] against the Company, provided however, that Consultant agrees to limit recovery for such causes of action, if any, to any available insurance proceeds under which the Company may be insured or a beneficiary, if applicable, and waive any and all rights to seek recovery from the Company's assets. To the extent the Company is required to incur any legal or other costs associated with any cause of action or other claim asserted by Consultant, upon two (2) days written notice from Company, Consultant shall cease the prosecution of any such claim or cause of action.

---

[2] The facts in this section are drawn from public documents filed with and by the United States Bankruptcy Court for the District of Delaware.

4

Goodman Aff., Ex. D, Addendum ¶ D.  The agreement also provided that Cantor would provide general consulting services to ABN and be paid $125,000 in five annual installments of $25,000. Id. at ¶¶ A, C.  In the event of Cantor's death, any unpaid installments were to be accelerated and paid to his estate forty-five days after his death. Id.

## DISCUSSION

**I. Defendants' Rule 12(b)(1) Motion[3]**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  In deciding a Rule 12(b)(1) motion, the Court may properly refer to evidence outside the pleadings, id. (citing Kamen v. American Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986)), and the Court "construe[s] all ambiguities and draw[s] all inferences in [the] plaintiff's favor." Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005) (internal quotations and citations omitted).  A plaintiff asserting subject matter jurisdiction "has the burden of proving by a preponderance of the evidence that it exists." Makarova, 201 F.3d at 113.

Plaintiff's Amended Complaint alleges claims under 29 U.S.C. § 1132, and the Court therefore possesses federal question jurisdiction over those claims under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e), and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367. See Am. Compl. ¶ 5.  Defendants do not dispute

---

[3] "Where...the defendant moves for dismissal under Rule 12(b)(1),…as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot." See Rhulen Agency, Inc. v. Alabama Ins. Guaranty Ass'n, 896 F.2d 674, 678 (2d Cir. 1990) (internal citations and quotations omitted).

this claim of jurisdiction directly, but rather assert that this action cannot be maintained without interpretation of the 2005 Agreement, the Reorganization Plan, and the Confirmation Order, and that such questions fall within the exclusive jurisdiction of the Bankruptcy Court.  The Court disagrees.

**B. The Bankruptcy Court's Jurisdiction**

Generally, a bankruptcy court's jurisdiction abates upon confirmation of the reorganization plan. Guccione v. Bell, No. 06 Civ. 492, 2006 WL 2032641, at *4 (S.D.N.Y. July 20, 2006); In re Kassover, 336 B.R. 74, 79 (Bankr. S.D.N.Y. 2006). ". . . [A] party invoking the bankruptcy court's post-confirmation jurisdiction must satisfy two requirements.  First, the matter must have a close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution or administration of the confirmed plan and second, the plan must provide for the retention of jurisdiction over the dispute." In re Kassover, 336 B.R. at 79. (citation omitted); see also In re Petrie Retail, Inc., 304 F.3d 223, 230 (2d Cir. 2002) ("A bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders, particularly when disputes arise over a bankruptcy plan of reorganization."). While the 2005 Confirmation Order and Reorganization Plan plausibly provide for retention of jurisdiction over Plaintiff's claims, see Goodman Aff., Ex. B. at 22-23, Ex. C ¶ 15, Defendants failed to demonstrate a close nexus between Plaintiff's claims and the Reorganization Plan.

Defendant argues that the 2005 Agreement is encompassed within the Reorganization Plan and the Confirmation Order, and therefore interpreting its provisions and adjudicating disputes over them is committed to the Bankruptcy Court.  This position

is untenable.  The Reorganization Plan provides only that ABN will enter into the 2005 Agreement after the confirmation date.  The Reorganization Plan was therefore fully implemented, consummated, executed, and administered with respect to the 2005 Agreement as soon as the agreement was signed.  Similarly, the Confirmation Order merely authorizes ABN to enter into the agreement, and the agreement itself is not part of the order.  Raising the 2005 Agreement as a defense to Plaintiff's suit does not provide a close nexus between this action and the bankruptcy proceeding.

Defendant also asserts that jurisdiction lies with the Bankruptcy Court because Plaintiff's action necessarily requires interpretation of the discharge provisions of the Reorganization Plan.  Such interpretation is not, in fact, necessary.[4]  The Court therefore finds that the Bankruptcy Court lacks jurisdiction over this action and, consequently, the Court's subject matter jurisdiction has been properly established.  Defendants' motion to dismiss for lack of jurisdiction is therefore denied.

**II. Defendants' Rule 12(b)(6) Motion**

The district court may dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) only if the plaintiff's factual allegations are not sufficient "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1609 (2007).  The court accepts as true all factual allegations in the complaint, and views them in the light most favorable to the plaintiff. See De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996).  While specific factual allegations are not required, however, a plaintiff must provide the grounds of her entitlement to relief beyond mere

---

[4] The Court will not address this issue further here.  ABN's discharge in the Reorganization Plan is discussed further below.  As to Gentile and ABNCo, the court's dismissal of all claims against them on the merits renders extended analysis pointless.

7

labels and conclusions; a formulaic recitation of the elements of a cause of action is insufficient. See Twombly, 127 S.Ct. at 1964-65.

In ruling on a motion under Rule 12(b)(6), the Court may consider only the allegations made in the complaint and any matters of which judicial notice may be taken. See Brass v. Amer. Film Techn., Inc., 987 F.2d 142, 150 (2d Cir. 1993); see also Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 75 (2d Cir. 1998) ("It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)"). The complaint "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991), cert. denied, 503 U.S. 960 (1992).

**A. The ERISA Claims**

ERISA permits a participant in or beneficiary of an ERISA plan to bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C § 1132(a)(1)(B).[5] In order "to enforce the terms of the plan under Section 1132(a)(1)(B) 'the participant must first qualify for the benefits provided in that plan.'" Strom v. Goldman, Sachs & Co., 202 F.3d 138, 142 (2d Cir. 1999) (quoting Tolle v. Carroll Touch, Inc., 977 F.2d 1129, 1134 (7th Cir. 1992). The Amended Complaint makes extremely clear, however, that Cantor's failure to convert his group insurance coverage to an individual policy rendered him ineligible for benefits under the Hartford

---

[5] Plaintiff admitted that her ERISA claims are for benefits owed her under § 1132 (a)(1)(B) at oral argument on April 11, 2007, and abandoned any potential claims under § 1132 (a)(2) or (a)(3). See Oral Argument Transcript ("Tr."), 18-19. The Court therefore considers Plaintiff's claim only under §1132(a)(1)(B).

Plan. That is, in fact, the entire basis for the damages element of Plaintiff's breach of contract, equitable estoppel and negligent misrepresentation claims. No set of facts consistent with those allegations can support a claim under § 1132(a)(1)(B). See id.; see also Kishter v. Principal Life Ins. Co., 186 F.Supp.2d 438, 442 (S.D.N.Y. 2002) ("Because plaintiff has admitted, for the purposes of this claim, that he is not entitled to benefits under the plan, the claim cannot be construed as one to recover benefits wrongfully withheld.").

Plaintiff argued at oral argument that Defendants, as the cause of Cantor's failure to maintain his eligibility for benefits, should be estopped from denying Cantor's eligibility under the Hartford Plan. See Tr. 19-24. An argument essentially indistinguishable from Plaintiff's was rejected by the Second Circuit in Strom. There, the plaintiff's husband died before becoming eligible for additional life insurance benefits under his employer's plan, due to the employer's negligence in handling his application. Strom, 202 F.3d at 140-142. To avoid a determination that she could not recover under § 1132(a)(1)(B) because her husband had not been eligible for the relevant benefits, the plaintiff argued "that the defendants are precluded from relying upon the failure of [the decedent's] coverage to have taken effect before his death on the ground that the failure was the product of [the defendants'] own actions." Id. at 142. The court found, however, that such an estoppel argument could not prevail where the insurance carrier was the "both the promissor on the insurance contract and the entity that invoked the failure to satisfy the condition in order to excuse performance," and thus it was "not [the defendant] which seeks to benefit from its own actions, but a third party." Id. at 142; cf. Schonholz v. Long Island Jewish Med. Ctr., 87 F.3d 72, 78 (2d Cir.1996) (finding

9

promissory estoppel under ERISA in "extraordinary circumstances" where severance benefits were both promised and denied by the defendant). Here, it was not the Defendants but Hartford that was the promissor on the Hartford Plan and the entity that rejected Cantor's claim for benefits. Plaintiff cannot rely on estoppel to remedy Cantor's lack of eligibility for benefits under the Hartford Plan, and Plaintiff's ERISA claims must therefore be dismissed.[6]

**B. ERISA Pre-emption of State Law Claims**

ERISA is designed "to ensure that employee benefit plan regulation would be 'exclusively a federal concern,'" Aetna Health Inc. v. Davila, 542 U.S. 200, 208 (2004) (quoting Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 523 (1981)). The provisions of ERISA "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan…" 29 U.S.C. § 1144(a). Moreover, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy…is [] pre-empted," Davila, 542 U.S. at 209, even if the action does not fall within the express terms of Section 1144(a). See id. at 214 n.4.

In Davila, a unanimous Court set forth the following standard for finding pre-emption of a cause of action under ERISA:

> Where the individual is entitled to such [benefits] only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls "within the scope of" ERISA § 502(a)(1)(B). In other words, if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA[].

---

[6] Having dismissed these claims based on Cantor's ineligibility for benefits, the Court need not address Defendants' arguments that Plaintiff failed to plead administrative exhaustion and that ABN and Gentile are improper defendants.

10

Id. at 210.  Applying this standard to the causes of action before it, the Court noted that "interpretation of the terms of [plaintiffs'] benefit plans forms an essential part of their [non-ERISA claim], and liability would exist here only because of [defendants'] administration of ERISA-regulated benefit plans." Id. at 213. The defendants' potential liability under the non-ERISA causes of action therefore "derive[d] entirely from the particular rights and obligations established by the benefit plans," and therefore the actions where not "entirely independent of the federally regulated contract itself." Id. Because plaintiffs brought suit only "to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and do not attempt to remedy any violation of a legal duty independent of ERISA," their causes of action were pre-empted. Id. at 214.  With this guidance in mind, the Court now turns to Plaintiff's individual state law claims.

### *Breach of Contract*

Plaintiff's breach of contract claim does not duplicate, supplement or supplant an ERISA claim for benefits under § 1132(a)(1)(B).  Rather it seeks to enforce an independent legal duty owed by ABN under the 2001 Agreement.[7] Drawing all inferences in favor of Plaintiff, the 2001 Agreement contractually obligated ABN to provide Cantor the same benefits post-agreement that he had previously received, both in consideration for settlement of outstanding claims and as an inducement for him to leave full-time employment with ABN.  Cantor's entitlement to the benefits does not, therefore, "derive[] entirely from the particular rights and obligations established by the benefit plans," but rather from the 2001 Agreement. That the method selected for providing those

---

[7] Defendants do not allege that the 2001 Agreement itself constitutes an employee benefit plan under ERISA.

11

benefits was modification of an existing ERISA plan does not alter the independent nature of the obligation.

The point is clarified by further comparison to Davila. ABN's potential liability does not exist only because of its administration of the Hartford Plan, but because of the 2001 Agreement. Indeed, it is ABNCo and not ABN that administers the Hartford Plan. Similarly, Plaintiff does not bring suit "to rectify a wrongful denial of benefits promised under ERISA-regulated plans," but explicitly acknowledges that the denial of benefits was proper. It is the breach of ABN's independent contractual obligation, rather than the denial of benefits, that Plaintiff seeks to remedy, and therefore Plaintiff's breach of contract claim is not pre-empted.

The Second Circuit's decision in Devlin v. Transportation Communications Intern. Union, 173 F.3d 94 (2d Cir. 1999), on which Defendants rely, is consistent with this ruling. There, the Second Circuit held that a state breach of contract claim was pre-empted where an employer and plan administrator's attempt to modify an ERISA-covered plan was alleged to contradict promises made to retired employees that they would never have to pay for their health benefits. Devlin, 173 F.3d at 97. The court found that the breach of contract action "clearly relate[d]" to the benefit plan because of its basis on an amendment to the plan, noting that "resolution of the claim would necessarily involve interpreting the plan, its design, and ERISA." Id. at 101 (2d Cir. 1999). Plaintiff's contract claim does not challenge an action or omission by the Hartford Plan administrator. Nor does it rest on representations concerning the scope of Plaintiff's benefits under the existing Hartford Plan, but rather concerns future consideration guaranteed regardless of the plan's existing terms. Cf. Smith v. Dunham-Bush, 959 F.2d

6, 10 (2d. Cir. 1992) (pre-empting state law claims where "the oral representation underlying this suit deals expressly and exclusively with the appellant's benefits"). Finally, Plaintiff's claim requires no interpretation of the Hartford Plan's design or ERISA itself.  It is plausible that proof of Plaintiff's damages might require interpretation of the Hartford Plan's provisions, or that ABN might ultimately raise a defense that puts the provisions of the Plan into dispute, but the allegations in the Amended Complaint do not compel that conclusion, and therefore it is not a proper consideration on a motion under Rule 12(b)(6).  As Plaintiff's breach of contract action does not turn on ERISA or the Hartford Plan, and is based on an independent legal duty owed by Defendant under the 2001 Agreement, it is not pre-empted.

### *Equitable Estoppel*

The arguments made above with respect to breach of contract apply equally to Plaintiff's claim of equitable estoppel, and it too is not pre-empted by ERISA.

### *Negligent Misrepresentation*

Under New York law, a plaintiff may recover for negligent misrepresentation only where the defendant owes her a fiduciary duty.  Plaintiff's allegations that Defendants owed Cantor a fiduciary duty are based on the Defendants connection to the Hartford Plan and the provisions of ERISA.  See Am. Compl. ¶ 41, 50, 59. Defendants' potential liability for the alleged misrepresentations exists only as a result of ERISA and the plan, and these claims are therefore pre-empted on that basis alone.

**C. ABN's Alleged Discharge in Bankruptcy**

ABN argues that it was discharged by the Reorganization Plan, under 11 U.S.C. § 524, from any potential liability for Plaintiff's claims except as explicitly permitted by the terms of the 2005 Agreement. ABN further alleges that Plaintiff violated those terms by failing to cease prosecution of this action within two days of written notice by ABN that it had been "required to incur any legal or other costs associated" with the action. See Goodman Aff., Ex. D, Addendum ¶ D. ABN argues that because Plaintiff failed to abide by the terms of the 2005 Agreement, she is barred from pursuing her claims against ABN.

The Second Circuit has clearly held that "§ 524 permits a plaintiff to proceed against a discharged debtor solely to recover from the debtor's insurer." Green v. Welsh, 956 F.2d 30, 35 (2d Cir. 1992). The 2005 Agreement, which similarly conditioned Cantor's right to bring his claims on his limiting his recovery to the insurance proceeds, therefore does not constitute an "exception" to ABN's discharge allowing Plaintiff's claim.[8] As Plaintiff is proceeding only to recover any available liability insurance proceeds,[9] ABN's discharge would not bar her claim, even if the 2005 Agreement did not exist. Rather, the 2005 Agreement constitutes an additional limitation on Plaintiff's right to bring suit for purposes of reaching the insurance proceeds by, in essence, mandating that ABN not be "required to incur" legal costs without its consent. It is therefore far from clear that the proper remedy for a violation of the conditions placed on Cantor's claims by the 2005 Agreement would be dismissal of Plaintiff's

---

[8] As a result, it is unnecessary to interpret the provisions of the Reorganization Plan discharging ABN in the course of adjudicating this action.

[9] While this is not clear from the face of the Amended Complaint, Plaintiff has disavowed and abandoned any more expansive claims. See Tr. at 18; see also Plaintiff's Opposition Brief, 13-16.

14

lawful claims.  The Court need not address that issue, however, because Defendant has not demonstrated that the 2005 Agreement has been violated.

Given the evidentiary restrictions on motions to dismiss, ABN cannot present evidence that it is "required" to incur costs or has incurred costs in the ordinary meaning of the term.  Rather, it can only assert that the "required to incur" language allows ABN to cut off any litigation initiated by Plaintiff, so long as it chooses to contest Plaintiff's claims in court.  Thus, ABN's mere presence as a represented party in this action would constitute a violation of the 2005 Agreement.  ABN contends, in short, that the 2005 Agreement provided it with an absolute veto over Plaintiff's claims.  This is not a particularly compelling interpretation of the agreement; it is certainly not an interpretation that the Court will adopt as a matter of law.  Viewing it in the light most favorable to Plaintiff, the 2005 Agreement has not been violated and Defendant's motion to dismiss on that basis must be denied.

## CONCLUSION

Defendant's motion to dismiss is GRANTED in part and DENIED in part.  Plaintiff's ERISA and negligent misrepresentations claims are dismissed with prejudice.  The remaining claims in this action are Plaintiff's breach of contract and equitable estoppel claims against ABN.  The Court will continue to exercise supplemental jurisdiction under 28 U.S.C. 1367, despite having dismissed the federal claims, in order to allow Plaintiff to amend her complaint to assert diversity jurisdiction under 28 U.S.C. § 1332.  Leave to amend is hereby granted <u>sua sponte</u>, as Plaintiff properly invoked such jurisdiction in the original Complaint against ABN, <u>see</u> Compl. ¶ 1-3, and all claims against the non-diverse party, ABNCo, have now been dismissed.  The parties shall

15

confer and submit a civil case management plan to the Court by November 26, 2007.

The Clerk of the Court is directed to close out this motion.

Dated:  New York, New York
        October 18, 2007

                                              SO ORDERED

                                              _____
                                              PAUL A. CROTTY
                                              United States District Judge

confer and submit a civil case management plan to the Court by November 26, 2007.

The Clerk of the Court is directed to close out this motion.

Dated: New York, New York
       October 18, 2007

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge

16